**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| JASON WILSON, PATRICK KRENEK, DONALD AKRIDGE, TIM VANGEE, LESLIE DALY, JOSEPH BASS, JAMES NEU, and CHRISTOPHER ADAMS, individually, and on behalf of all others similarly situated, | § § § § § § § | Civil Action No. 4:22-cv-00447 Hon. Amos L. Mazzant |
| *Plaintiffs*, | § § | |
| v. | § § | |
| FCA US LLC, | § § | |
| *Defendant.* | § | |

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF**
**SETTLEMENT AND MEMORANDUM IN SUPPORT THEREOF**

## TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................... 1

II.   BACKGROUND AND PROCEDURAL HISTORY ............................................... 3

  A.  Procedural History ............................................................................................ 3

  B.  Settlement Negotiations .................................................................................... 4

III.  THE PROPOSED SETTLEMENT ....................................................................... 5

  A.  The Settlement Class .......................................................................................... 5

  B.  Settlement Terms ................................................................................................ 6

  C.  Form and Scope of the Release ........................................................................ 7

IV.   NOTICE AND SETTLEMENT ADMINISTRATION ....................................... 8

V.    THE SETTLEMENT WARRANTS FINAL APPROVAL .............................. 10

  A.  The Court Should Reaffirm its Certification of the Settlement Class ........... 10

  B.  Notice to the Settlement Class Satisfied Rule 23 and Due Process ................ 10

  C.  All Factors Favor Final Approval of the Settlement ........................................ 11

    1.   Plaintiffs and Counsel Have Adequately Represented the Settlement Class ............... 13

    2.   The Settlement is the Product of Informed, Arm's-Length Negotiations With No Fraud or Collusion ........................................................................................... 14

    3.   The Settlement is Adequate Considering the Duration, Costs, Risks, and Delay of Continued Litigation ...................................................................................... 15

    4.   The Stage of the Proceedings and the Amount of Discovery Completed Supports Approval .......................................................................................................... 17

    5.   The Settlement is Reasonable Considering the Probability of Plaintiffs' Success on the Merits .............................................................................................................. 18

    6.   The Range and Certainty of Recovery Supports Approval of the Settlement ............. 19

    7.   The Respective Views of Plaintiffs and their Counsel Support Approval of the Settlement ........................................................................................................ 20

    8.   All Settlement Class Members Are Treated Equitably ............................................... 21

    9.   Other Factors Established by Rule 23(e)(2)(C) Support Approval ............................. 22

VI.   CONCLUSION ...................................................................................................... 24

i

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                                 **Page No.**

*Ayers v. Thompson*,
    358 F.3d 356 (5th Cir. 2004) .....................................................................................15, 17, 18

*Blackmon v. Zachary Holdings, Inc.*,
    No. SA-20-CV-00988-JKP, 2022 U.S. Dist. LEXIS 139417 (W.D. Tex. Aug. 5, 2022) ..........22

*C.C. & L.C. v. Baylor Scott & White Health*,
    No. 4:18-CV-828-SDJ, 2022 U.S. Dist. LEXIS 174005 (E.D. Tex. Sept. 26, 2022)...........12, 14

*Celeste v. Intrusion Inc.*,
    No. 4:21-CV-307-SDJ, 2022 U.S. Dist. LEXIS 226841 (E.D. Tex. Dec. 16, 2022).................19

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*,
    No. 6:12-1609, 2015 U.S. Dist. LEXIS 26051 (W.D. La. Feb. 11, 2015)................................22

*Clark v. Lomas & Nettleton Fin. Corp.*,
    79 F.R.D. 641 (N.D. Tex. 1978) ................................................................................................16

*Cotton v. Hinton,*
    559 F.2d 1326 (5th Cir. 1977) .....................................................................................12, 18, 21

*Cunningham v. Kitchen Collection, LLC*,
    No. 4:17-CV-770, 2019 U.S. Dist. LEXIS 111212 (E.D. Tex. July 3, 2019) ...........................19

*DeHoyos v. Allstate Corp.*,
    240 F.R.D. 269 (W.D. Tex. 2007) .............................................................................17, 18, 20

*Denman v. Jackson Nat'l Life Ins. Co.*,
    No. 4:16-CV-912-ALM, 2021 U.S. Dist. LEXIS 159103 (E.D. Tex. June 4, 2021) ................13

*Erica P. John Fund, Inc. v. Halliburton Co.,*
    No. 3:02-cv-1152-M, 2018 U.S. Dist. LEXIS 69143 (N.D. Tex. Apr. 25, 2018) ..........14, 19, 21

*Fidel v. Farley*,
    534 F.3d 508 (6th Cir. 2008) .....................................................................................................10

*Glickenhaus & Co. v. Household Int'l, Inc.*,
    787 F.3d 408 (7th Cir. 2015) .....................................................................................................16

*Hays v. Eaton Grp Attys., LLC*,
    No. 17-88-JWD-RLB, 2019, U.S. Dist. LEXIS 17029 (M.D. La. Feb. 4, 2019) ...........14, 15, 23

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)................................................................................20

*In re Chesapeake Energy Corp.*,
  567 F. Supp. 3d 754 (S.D. Tex. 2021) ...........................................................12, 18

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
  424 F. Supp. 3d 456 (E.D. La. 2020)...................................................................15

*In re Corrugated Container Antitrust Litig.*,
  643 F.2d 195 (5th Cir. 1981)..........................................................................13, 18

*In re Deepwater Horizon*,
  739 F.3d 790 (5th Cir. 2014) ........................................................................11, 12

*In re Katrina Canal Breaches Litig.*,
  628 F.3d 185 (5th Cir. 2010) ..............................................................................11

*In re Heartland Payment Sys., Inc. Customer Data Breach*,
  851 F. Supp. 2d 1040 (S.D. Tex. 2012).........................................................15, 16

*In re OCA, Inc. Sec. & Derivative Litig.*,
  No. 05-2165, 2009 U.S. Dist. LEXIS 19210 (E.D. La. Mar. 2, 2009) .....................17

*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*,
  910 F.Supp.2d 891 (E.D. La. 2012).....................................................................15

*In re Pool Prods. Distrib. Mkt. Antitrust Litig.*,
  310 F.R.D. 300 (E.D. La. 2015)...........................................................................10

*In re Pool Prods. Distrib. Mkt. Antitrust Litig.*,
  No. 2328, 2014 U.S. Dist. LEXIS 178989 (E.D. La. Dec. 31, 2014).......................23

*Izzio v. Century Golf Partners Mgmt., L.P.*,
  No. 3:14-cv-03194-M, 2019 U.S. Dist. LEXIS 226946 (N.D. Tex. Feb. 13, 2019),
  *aff'd* 787 F. App'x 242 (5th Cir. 2019)................................................................16

*Jenkins v. Trustmark Nat'l Bank*,
  300 F.R.D. 291 (S.D. Miss. 2014) .......................................................................12

*Klein v. O'Neal, Inc.*,
  705 F.Supp.2d 632 (N.D. Tex. 2010) ...................................................10, 16, 17 20

*Kostka v. Dickey's Barbecue Rests., Inc.*,
  No. 3:20-cv-03424-K, 2022 U.S. Dist. LEXIS 188186 (N.D. Tex. Oct. 14, 2022), *report and
  recommendation adopted* 2022 U.S. Dist. LEXIS 203081 (N.D. Tex. Nov. 8, 2022)...............15

*Maher v. Zapata Corp.*,
714 F.2d 436 (5th Cir. 1983) ..................................................................19

*Marcus v. J.C. Penney Co.*,
No. 6:13-CV-736, 2017 U.S. Dist. LEXIS 214427 (E.D. Tex. Dec. 18, 2017), *report and recommendation adopted* 2018 U.S. Dist. LEXIS 2387 (E.D. Tex. Jan. 4, 2018) ....................21

*Matson v. NIBCO Inc.*,
No. 5-19-CV-00717-RBF, 2021 U.S. Dist. LEXIS 201909 (W.D. Tex. Oct. 20, 2021)......16, 17

*Odonnell v. Harris Cnty., Tex.*,
No. H-16-1414, 2019 U.S. Dist. LEXIS 202474 (S.D. Tex. Nov. 21, 2019) ............................12

*Parker v. Anderson*,
667 F.2d 1204 (5th Cir. 1982) ................................................................12

*Pettway v. Am. Cast Iron Pipe Co.*,
576 F.2d 1157 (5th Cir. 1978) ................................................................20

*Reed v. Gen. Motors Corp.*,
703 F.2d 170 (5th Cir. 1983) ......................................................... *passim*

*Schwartz v. TXU Corp.*,
No. 3:02-CV-2243-K, 2005 U.S. Dist. LEXIS 27077 (N.D. Tex. Nov. 8, 2005) ....................18

*Stott v. Capital Fin. Servs., Inc.*,
277 F.R.D. 316 (N.D. Tex. 2011) ............................................................20

*Turner v. Murphy Oil USA, Inc.*,
472 F. Supp. 2d 830 (E.D. La. 2007)................................................19, 20

## <u>Other Authorities</u>

Fed. R. Civ. P. 23 ............................................................................. *passim*

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs and Class Representatives Jason Wilson, Patrick Krenek, Donald Akridge, Tim VanGee, Leslie Daly, Joseph Bass, James Neu, and Christopher Adams (collectively, "Plaintiffs"), individually and on behalf of the nationwide Settlement Class preliminarily approved by the Court on July 15, 2024, ECF No. 54, respectfully move for final approval of the proposed Settlement ("Final Approval Motion" or "Motion"). Defendant FCA US LLC ("FCA" or "Defendant") does not oppose the relief sought by this Motion.

## I.    INTRODUCTION

Plaintiffs' Settlement with FCA (collectively, Plaintiffs and FCA are the "Parties")— achieved after hard-fought litigation, including litigating multiple motions to dismiss in the United States District Courts for the Eastern District of Texas and the Central District of California— resolves claims arising from an unsafe and defective anti-lock braking system ("ABS") and materials used in the ABS module or brake hydraulic control units ("Brake HCU") of certain Model Years 2017–18 DJ RAM 2500/D2 Ram 3500/DD Ram 3500/DD Ram 3500 Cab Chassis/DF Ram 3500 10KLB Cab Chassis/DX Ram Cab Chassis/DP Ram 4500/5500 vehicles built by FCA between April 1, 2017 and December 29, 2018 (the "Class Vehicles"). As more fully discussed below, the Settlement provides meaningful and valuable relief to a nationwide Settlement Class comprised of current owners and lessees on or after November 1, 2023 of approximately 352,000 Class Vehicles and, significantly, includes a safety recall to address the defect, (NHTSA Recall No. 24V-896) (the "Recall"), reimbursement of repair costs that have already been incurred, and up to $600,000.00 to be made available for eligible Settlement Class members for rental reimbursements.

The Settlement, including the repair of the Class Vehicles, has an estimated value of over $80,000,000.00. *See* Declaration of Bruce Steckler in Support of Motion for Final Approval of Settlement, filed concurrently herewith (hereinafter "Steckler Decl."). Importantly, the relief sought by the litigation and secured pursuant to the Settlement addresses the long-standing problems of the Class Vehicles. In addition, FCA will separately pay for the costs of Notice, Administration Expenses, and any Attorneys' Fees, Costs, and Expenses. Importantly, the Settlement does not release claims of Settlement Class members with respect to any personal injuries.

After significant litigation, Plaintiffs' ultimate goals have been achieved. If finally approved and implemented, the Settlement will resolve all outstanding claims in the consolidated litigation, while providing robust relief and substantial benefits to the nationwide Settlement Class. In the absence of the Settlement resolving all outstanding claims in the litigation, the Parties could have continued to engage in their respective vigorous litigation in two separate federal district court venues—Texas and California—for years, through class certification proceedings, completion of fact and expert discovery, summary judgment, trial, and likely appeals. There is no question that the Settlement represents an excellent result for Settlement Class members, removing the uncertainty of prolonged litigation that could have occurred absent the unwavering efforts of Plaintiffs and Class Counsel.

The Settlement has the overwhelming support of Settlement Class members, as evidenced by the lack of objections thus far to the Settlement or to Class Counsel's request for fees and reimbursement of expenses, and Class Representative service awards—all of which FCA has agreed to pay. In light of the results achieved, and in consideration of the Rule 23 factors and the

*Reed* factors for approval of class settlements in the Fifth Circuit, Plaintiffs respectfully request that the Court grant final approval of the Settlement.

## II.     BACKGROUND AND PROCEDURAL HISTORY

### A.     Procedural History

The first-filed putative class action seeking redress arising from FCA's manufacture and sale of the alleged defective Class Vehicles on behalf of a Texas class was *Wilson, et al. v. FCA US LLC, et al.,* Case No. 4:22-cv-00447 (E.D. Tex.) ("*Wilson*"), filed May 26, 2022. ECF No. 1. A second case was filed, *Neu, et al. v. FCA US LLC*, Case No. 5:23-cv-00509 (C.D. Cal.) ("*Neu*") on behalf of a nationwide class and a California class on March 23, 2023, after which *Neu* filed a First Amended Complaint on June 8, 2023. A third case, *VanGee, et al. v. FCA US LLC*, Case No. 4:23-cv-00375 (E.D. Tex.) ("*VanGee*"), filed on behalf of a Texas class, was removed to this Court from Texas state court and consolidated with the *Wilson* Action on June 20, 2023. *See* ECF No. 29. Plaintiffs' class action complaints in Texas and California asserted claims against FCA under the respective statutory and common law of Texas or California. Each of the aforesaid actions sought redress and damages, alleging that as a result of the use of defective materials, the Class Vehicles have a dangerous and defective Brake HCU and ABS that causes their ABS, cruise control, and traction control systems to become inoperable.

On March 2, 2023, this Court denied a motion to dismiss the consolidated *Wilson* action. ECF 22. FCA filed an answer to the *Wilson* Complaint on March 16, 2023. ECF No. 23. After *VanGee* was consolidated, an Amended Consolidated Class Action Complaint was filed in the *Wilson* Action on June 26, 2023. ECF No. 30. On July 31, 2023, FCA again moved to dismiss the consolidated *Wilson* Action. ECF No. 37. Plaintiffs opposed the motion on August 14, 2023, and FCA replied on August 21, 2023. ECF Nos. 38, 39.

Motion practice also took place in the *Neu* action in the United States District Court for the Central District of California. A motion to dismiss *Neu* Plaintiffs' First Amended Complaint was filed on June 22, 2023, and granted in part and denied in part on November 13, 2023. A Second Amended Complaint was filed in the *Neu* action on November 27, 2023, addressing, in part, the issue of privity to assert warranty claims under California law, except with respect to warranty claims arising under the Song Beverly Warranty Act of California, which were sustained by Order dated November 13, 2023. *Neu*, ECF No. 45. Discovery in the actions was undertaken with an exchange of document requests, documents, interrogatories, and initial disclosures. Steckler Decl. ¶ 3.

Pursuant to the subsequent Settlement of the Parties, the amended claims that had been asserted in the *Neu* action were refiled in the United States District Court for the Eastern District of Texas and consolidated with *Wilson*. *See* ECF No. 46. Accordingly, Plaintiffs in *Wilson* filed a Second Amended Consolidated Class Action Complaint on March 19, 2024. ECF No. 47,[1] as a consequence of which the Court denied FCA's pending motion to dismiss the prior Amended Consolidated Class Action Complaint in the Action, ECF No. 30, as moot. ECF No. 49.

### B.    Settlement Negotiations

While Defendant's motions to dismiss in both the Eastern District of Texas and Central District of California were still *sub judice*, the Parties agreed to engage in arm's-length, vigorous settlement negotiations. On September 12, 2023, the Court referred this Action to mediation and designated Bradley A. Winters of JAMS to serve as the settlement mediator. ECF No. 42. On October 24, 2023, the Parties participated in a full-day in-person mediation session in Clayton,

---

[1] Defendant has agreed to submit to the personal jurisdiction of this Court with respect to all claims for a nationwide Class and a California Class and in order to effectuate the Settlement affording relief for a nationwide Class. *See* ECF No. 46.

Missouri, with Mr. Winters. ECF No. 43. A second mediation session with Mr. Winters was held remotely on December 20, 2023. Steckler Decl. ¶ 5. The Parties also had telephonic discussions for the purposes of exploring and reaching settlement, which negotiations were also extensive. *Id.*

The material terms of the Settlement for a nationwide Class were agreed upon as a consequence of the in-person and extensive telephonic mediation sessions before Mr. Winters, after which a Settlement Agreement was drafted and fully executed on May 21, 2024. The Parties agreed on terms with respect to attorney's fees, costs, and expenses, and Plaintiffs' service awards only after all material terms of the Settlement were agreed upon. Steckler Decl. ¶ 8. The Settlement Agreement was submitted to the Court on June 10, 2024. Thereafter, the Parties agreed to the Addendum to Settlement Agreement, which incorporates NHTSA Recall No. 24V-896 into the Settlement. *See* Steckler Decl. Ex. 1-B ("Settlement Addendum"). The Recall will allow Settlement Class members to obtain replacements for the Brake HCU, which is in addition to the other relief obtained in the Settlement.

After careful consideration of the facts and applicable law, the risk, expense, and uncertainty of continued litigation, and after having engaged in extensive, arm's-length negotiations before a reputable mediator, the Parties agreed that it is in their mutual best interest to resolve the claims in this action on fair, reasonable and adequate terms, as set forth in the Settlement Agreement and Addendum thereto. *See* ECF Nos. 57, 58; Steckler Decl. ¶ 7, Exs. 1-A and 1-B, hereto.

## III.  THE PROPOSED SETTLEMENT

The terms of the Settlement are briefly summarized below.

### A.  The Settlement Class

The nationwide Settlement Class is defined as:

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND SUPPORTING MEMORANDUM

All current owners or lessees of a Model Year 2017-2018 DJ Ram 2500/D2 Ram 3500/DD Ram 3500 Cab Chassis/ DF Ram 3500 10K LB Cab Chassis/DX Ram Cab Chassis/DP Ram 4500/5500 vehicles built between April 1, 2017 and December 29, 2018. For purposes of this definition, "current owners or lessees" are owners or lessees of a Class Vehicle on or after November 1, 2023.

### B.    Settlement Terms

In consideration for the Settlement, Entry of Judgment, and Dismissal, and for the Release of Claims, FCA has agreed to provide the Settlement Class with the Recall providing for the installation of a new brake HCU component with a pump motor brush material change, repair reimbursements, and rental vehicle reimbursements, while also covering the cost of Settlement Administration and Notice. Exs. 1-A § III, 1-B § III.[2] Settlement Class members will not be required to present any Settlement-related documentation to receive the NHTSA Recall No. 24V-896 remedy at an authorized FCA dealership.

The Settlement also provides for repair reimbursements. Steckler Decl. Ex. 1-A, § III.B. Any Settlement Class member who paid for a repair relating to the replacement of a Brake HCU component is entitled to submit a claim for reimbursement. *Id.* ¶ 3.6. FCA will provide an accounting of the reimbursement claims made and paid in a form acceptable to the Court at least one week before the hearing on Final Approval of this Settlement. *Id.* ¶ 3.6.

Settlement Class members may also submit claims for reimbursement for rental vehicles. *Id.* ¶ 3.7. Such claims must be supported by car rental receipts and proof of a contemporaneous repair to the Class Vehicle's Brake HCU. *Id.* FCA will pay up to a total of $600,000 for the collective Settlement Class members' claims relating to rental vehicle reimbursements. *Id.*

---

[2] References to "§ ____" refer to the corresponding sections and paragraphs of the Settlement Agreement. Ex. 1-A to Steckler Decl. and Settlement Addendum, Ex. 1-B to Steckler Decl.

Individual claims are not to exceed $100 per day or a total limit of $1,000 per Class Vehicle. *Id.* If all claims exceed $600,000, then payment will be made and distributed on a *pro rata* basis. *Id.*

In addition, FCA will pay for all Administration Expenses and the cost of Notice. *Id.* ¶ 3.8. FCA will also provide Plaintiffs with reasonable confirmatory discovery concerning the efficiency of the Brake HCU counter measures, the timing of the availability of the Brake HCU components, and the diagnostic criteria that will be used for repairs. *Id.* ¶3.9.

The Parties believe the total value of the Settlement's relief, including the Recall, (exclusive of attorney's fees, costs, expenses, and cost of notice and administration) exceeds $80,000,000. Steckler Decl. ¶ 12.

### C.    Form and Scope of the Release

In exchange for the benefits provided under the Settlement, Settlement Class members will release the Released Claims against the Releasees. *See* ¶ 7.1. Released Claims include any and all claims, causes of action, demands, debts, suits, liabilities, obligations, damages, actions, rights of action, remedies of any kind and/or causes of action of every nature and description, whether known or unknown, asserted or unasserted, foreseen or unforeseen, regardless of any legal theory, existing now or arising in the future, by Plaintiffs and any and all Settlement Class members relating to the facts, acts, events, transactions, occurrences, courses of conduct, representations, omissions, circumstances or other matters alleged in the Action. Steckler Decl. Ex. 1-A, ¶ 2.18; § VII. The Release is narrowly tailored as Released Claims do not include claims for death, personal injuries, damage to tangible property other than a Class Vehicle, subrogation, or any pending automobile lemon law claims. *Id.* ¶¶ 2.18, 7.2.

IV.    **NOTICE AND SETTLEMENT ADMINISTRATION**

By Order dated July 15, 2024 ("Preliminary Approval Order") (ECF No. 54), as revised by Order dated January 3, 2025, ("Revised Notice and Settlement Addendum Approval Order" or "Revised Order") (ECF No. 62), the Court appointed Kroll Settlement Administration LLC ("Kroll") as the Administrator to effectuate a program to publish and supervise the notice process ("Notice Program") and administer the Settlement. The effectuation and administration of the Notice Program was accomplished through a combination of sending a "Short-Form Notice" to all reasonable identifiable Settlement Class members by U.S. Mail, and enhanced by establishing and maintaining a "Settlement Website"—effective internet notice—where Settlement Class members could readily access a "Long-Form Notice," a copy of the Settlement Agreement and Settlement Addendum, the current operative complaint, and additional information about the Action and Settlement. The Notice Program informed Settlement Class members that they could obtain a Long Form Notice via direct mail on the Settlement-dedicated website, and by calling a toll-free phone number established to field nationwide Settlement Class member inquiries regarding the Settlement. Declaration of Patrick M. Passarella of Kroll Settlement Administration LLC in Connection with Final Approval of Settlement ("Passarella Decl."), ¶¶ 5–9. Both the Court-approved revised Short-Form Notice and Long-Form Notice "clearly and concisely state in plain, easily understood language" a description of the Settlement Class, a description of the claims, a description of Settlement Class Members' opportunity to appear at the Final Approval Hearing of April 11, 2025, opt-out and objection deadline specifics, and the manner by which Settlement Class members could obtain further information. Passarella Decl., Exs. C and D,.

Importantly, the Short-Form Notice, the Long-Form Notice, and the Settlement Website clearly inform Settlement Class members of the Settlement and that said Settlement provides for

the installation of a new Brake HCU component with a pump motor brush material change. The Notices further inform the nationwide Settlement Class members of Class Counsel's request for up to $2,000,000 in attorneys' fees, costs, and expenses for Plaintiffs' Counsel, and Service Awards up to $3,000 for Class Representatives, while notifying Settlement Class members that more information is available on the Settlement Website, or that they can call a toll-free number for more information.

The details respecting submission of claims for reimbursement of previous repairs or vehicle rental, to the extent afforded under the Settlement, required to be made through the "FCA" reimbursement system, are posted in the Short-Form Notice, the Long-Form Notice and the Settlement website. *See* Steckler Decl., Exs. 1-A and 1-B. The process for reimbursement is straight-forward.

Kroll has administered the Notice Program in accordance with the Court's Orders. *See* Passarella Decl. ¶¶ 5–9. Kroll has mailed 284,900 Short-Form Notices via direct U.S. Mail to all reasonably identifiable nationwide Settlement Class members. *See* Passarella Decl. ¶ 9. As of March 6, 2025, the Notice Program's individual notice efforts have reached approximately 97.5% of the reasonably identifiable Settlement Class members. *Id.* ¶ 9–11.

Judging by the response to date, Settlement Class members support the Settlement. The Objection deadline is March 20, 2025. *See* ECF No. 62. Thus far, not a single Settlement Class Member has objected to the Settlement. *See* Passarella Decl., ¶ 13. Settlement Class members have a postmark deadline of March 20, 2025, to submit requests for exclusion. ECF No. 62. As of March 6, 2025, there were only two exclusion requests submitted—a minuscule percentage of the Class. *Id.* ¶ 13. The Notice Administrator will provide the Court with a final report regarding notice and requests for exclusion.

## V.    THE SETTLEMENT WARRANTS FINAL APPROVAL

### A.  The Court Should Reaffirm its Certification of the Settlement Class

Finding that the requirements under Rule 23(a) and Rule 23(b)(3) are satisfied, the Court preliminarily approved the Settlement, certified the Class for settlement purposes, and appointed Class Representatives and Class Counsel for the nationwide Class. ECF No. 54 ¶¶ 2–3(a)-(e); *see also* ECF No. 53 (Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement) (analyzing all factors in support of settlement class certification and appointment of Class Representatives and Class Counsel). Nothing has changed with respect to the Settlement or Settlement Class, other than now including the Recall, to alter the Court's ruling on class certification. *See Klein v. O'Neal, Inc*., 705 F.Supp.2d 632, 668 (N.D. Tex. 2010) (reaffirming certification of class where only objection was based on facts that the court considered at preliminary certification). Accordingly, as the requirements of Rule 23(a) and 23(b)(3) have been and remain satisfied, the Court should grant final certification of the Settlement Class and appoint Class Representatives and Class Counsel for the Class.

### B.    Notice to the Settlement Class Satisfied Rule 23 and Due Process

Before approving a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Where the settlement class is certified under Rule 23(b)(3), the notice must also be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Due process does not require actual notice to all class members. *See In re Pool Prods. Distrib. Mkt. Antitrust Litig*., 310 F.R.D. 300, 317 (E.D. La. 2015) (citing *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008)). "[A] settlement notice need only satisfy the 'broad reasonableness standards imposed by due process.'"

*In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 197 (5th Cir. 2010). As to the content of the notice, "under Rule 23(c)(2)(B), the notice must clearly and concisely state in plain, easily understood language, the nature of the action, the definition of the class certified, the class claims, issues, or defenses, and other items of information relating to opting out, making objections, and the consequences of the judgment." *In re Deepwater Horizon*, 739 F.3d 790, 819 (5th Cir. 2014) (cleaned up). The notice is not required to inform absent class members of "every material fact that has taken place prior to the notice." *Id.*

The Notice Program implemented by the Administrator and approved by the Court—consisting of a mailed Short-Form Notice, and a robust Settlement Website including, *inter alia*, the Long-Form Notice, Settlement Agreement, and Settlement Addendum—has provided the Settlement Class members all information required by Rule 23(c)(2)(B) including, *inter alia*: (i) the nature of the Action; (ii) the definition of the Settlement Class; (iii) the Settlement Class's claims, issues, and defenses; (iv) the Settlement's terms; (v) the considerations that caused Plaintiffs and Class Counsel to conclude that the Settlement was fair, reasonable, and adequate; (vi) the procedures for requesting exclusion from the Settlement Class or objecting to the Settlement; (vii) the procedures for entering an appearance through an attorney; (viii) the procedures for submitting a Claim Form; (ix) the binding effect of a class judgment; (x) the date, time, and place of the Fairness Hearing; and (xi) how to obtain additional information regarding the Settlement. *See* Fed. R. Civ. P. 23(c)(2)(B); Passarella Decl., Exs. C and D. Accordingly, the Notice Program satisfies Rule 23 and comports with due process.

### C.    All Factors Favor Final Approval of the Settlement

Because the settlement of class action disputes "minimize[s] the litigation expenses of the parties and reduce[s] the strain that litigation imposes upon already scarce judicial resources,"

*Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 301 (S.D. Miss. 2014), the Fifth Circuit has long recognized a strong public policy favoring settlements of class actions. *See Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement.") *Parker v. Anderson,* 667 F.2d 1204, 1209 (5th Cir. 1982) (same); *In re Deepwater Horizon*, 739 F.3d at 807 (same).

In class action litigation, Rule 23 requires the Court to determine whether a class action settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2) "Rule 23(e)(2) was amended in 2018 to provide 'uniform guidance' to courts evaluating class settlements." *In re Chesapeake Energy Corp.*, 567 F. Supp. 3d 754, 768 (S.D. Tex. 2021). Courts in the Fifth Circuit apply the six factors set forth in *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) (the "*Reed*" factors) and often consider the requirements of Rule 23 as informed by the *Reed* factors. "Because the Rule 23 and Reed factors overlap, 'courts in this circuit often combine them in analyzing class settlements.'" *C.C. & L.C. v. Baylor Scott & White Health*, No. 4:18-CV-828-SDJ, 2022 U.S. Dist. LEXIS 174005, at *7 (E.D. Tex. Sept. 26, 2022). *See also*, *Odonnell v. Harris Cnty., Tex.*, No. H-16-1414, 2019 U.S. Dist. LEXIS 202474, at *26 (S.D. Tex. Nov. 21, 2019).

The combined Rule 23 and *Reed* factors are: (1) whether the class representatives and counsel have adequately represented the class; (2) whether the proposed class settlement was negotiated at arm's length, or was a product of fraud or collusion; (3) whether the relief is adequate considering the duration, costs, risks, and delay of trial and appeal; (4) the stage of the proceedings and the amount of discovery completed; (5) the probability of success on the merits; (6) the range and certainty of recovery; (7) the opinions of the participants, including class counsel, class representatives, and the absent class members; and (8) whether the proposal treats class members

equitably in relation to each other. *Reed*, 703 F.2d at 172 (citation omitted).[3] As explained below,

all relevant factors are met here.

### 1. Plaintiffs and Counsel Have Adequately Represented the Settlement Class

There can be no dispute that Plaintiffs[4] and Class Counsel have adequately represented

the Settlement Class. Over the course of the litigation, Plaintiffs and Class Counsel dedicated

substantial time and effort on behalf of the Class, fully investigated the facts and underlying

events relating to the Defect of the Class Vehicles, produced documents and answers to

interrogatories to FCA, conducted substantial discovery, analyzed the Defect, and obtained a

remedy for the Class. In other words, "counsel performed diligently and skillfully, achieving a

speedy and fair settlement, distinguished by the use of informal discovery and cooperative

investigation to provide the information necessary to analyze the case and reach a resolution."

*Denman v. Jackson Nat'l Life Ins. Co.*, No. 4:16-CV-912-ALM, 2021 U.S. Dist. LEXIS 159103,

at *10 (E.D. Tex. June 4, 2021).

As a direct result of this litigation, a safety Defect has now been appropriately addressed

by the Settlement, thereby making the Class Vehicles much safer. This term of the Settlement

further demonstrates Plaintiffs' and Class Counsel's diligent representations of Settlement Class

members.

---

[3] The factors set forth in Rule 23(e)(2), added by amendment effective December 1, 2018, were not intended to "displace any factor" used by the Courts of Appeal to assess final settlement approval, but rather to focus on core concerns to guide the approval decision. *See* Fed. R. Civ. P. 23, 2018 Advisory Committee Notes. The factors in amended Rule 23(e)(2) are wholly consistent with the Fifth Circuit's *Reed* factors and each are addressed herein.

[4] Plaintiffs' claims are and have always been coextensive with the claims of the Settlement Class. There are no antagonistic interests. Furthermore, Plaintiffs' interest in obtaining the largest possible recovery is aligned with the Settlement Class. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) (alignment exists when "class members are united in asserting a common right, such as achieving the maximum possible recovery for the class").

Plaintiffs retained counsel who are highly experienced in complex class action litigation, including those involving automotive defects. Steckler Decl. ¶ 20, and Exhibits 2, 3, and 4 thereto (Class Counsels' firm resumes). Moreover, Class Counsel vigorously prosecuted Plaintiffs' claims prior to reaching the Settlement, including filing extensive oppositions to motions to dismiss in both Texas and California. Plaintiffs reviewed the complaints filed in the various actions to familiarize themselves with the facts and issues and have assisted Class Counsel in litigating this Action. Steckler Decl. ¶ 19. Accordingly, Plaintiffs and Class Counsel have adequately represented the Settlement Class. *See Hays v. Eaton Grp Attys., LLC*, No. 17-88-JWD-RLB, 2019, U.S. Dist. LEXIS 17029, at *23 (M.D. La. Feb. 4, 2019) (representation adequate where proposed settlement was "negotiated by experienced, informed counsel . . . with substantial experience in litigating complex class actions" and where lead plaintiff was "familiar with the factual and legal issues"). This *Reed* factor and Rule 23 (e)(2)(A) clearly support final approval of the Settlement.

### 2.    The Settlement is the Product of Informed, Arm's-Length Negotiations With No Fraud or Collusion

The proposed Settlement is the product of well-informed and good faith negotiations between the Parties, conducted at arm's-length over many months, after extensive motion practice and document review, and facilitated by a well-respected, experienced mediator approved by the Court, Mr. Winters of JAMS. Steckler Decl. ¶¶ 4–5. As a threshold matter, a court may "presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary." *C.C. & L.C.*, 2022 U.S. Dist. LEXIS 174005, at *8. Importantly, that "the settlement was obtained through formal mediation . . . strongly suggests that the settlement was not the result of improper dealings." *Erica P. John Fund, Inc. v. Halliburton Co.,* No. 3:02-cv-1152-M, 2018 U.S. Dist. LEXIS 69143, at *18–19 (N.D. Tex.

Apr. 25, 2018). The use of a mediator "further weigh[s] in favor of a finding that the Settlement was fairly negotiated." *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*, 910 F.Supp.2d 891, 931 (E.D. La. 2012).[5]

The Parties reached agreement on all the material terms and benefits provided to the Class before negotiating attorney fees, costs and expenses, and service awards, thus avoiding any "threat of the issue tainting the fairness of the settlement negotiations." *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 424 F. Supp. 3d 456, 486 (E.D. La. 2020); *see also* Steckler Decl. ¶ 8. The record demonstrates the zealous advocacy that the Parties practiced throughout this litigation, and there is no indication that the Settlement is the product of fraud or collusion. This *Reed* factor and Rule 23(e)(2)(B) support final approval of the Settlement.

### 3. The Settlement is Adequate Considering the Duration, Costs, Risks, and Delay of Continued Litigation

The Settlement is adequate because it provides significant, immediate relief and "a trial would be lengthy, burdensome, [] would consume tremendous time and resources of the Parties and the Court [and] any judgment would likely be appealed." *Hays*, 2019 U.S. Dist. LEXIS 17029, at *25. Indeed, "[m]ost class actions are inherently complex and settlement avoids the costs, delays and [a] multitude of other problems associated with them." *Kostka v. Dickey's Barbecue Rests., Inc.*, No. 3:20-cv-03424-K, 2022 U.S. Dist. LEXIS 188186, at *36 (N.D. Tex. Oct. 14, 2022), *report and recommendation adopted* 2022 U.S. Dist. LEXIS 203081 (N.D. Tex.

---

[5] Settlement negotiations were procedurally fair given that the Parties and the Court possess ample information with which to evaluate the merits of the competing positions. Steckler Decl. ¶ 5; *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004). It is not necessary for merits discovery to be completed in order for the Parties to possess sufficient information. *See, e.g., In re Heartland Payment Sys., Inc. Customer Data Breach*, 851 F. Supp. 2d 1040, 1064–65 (S.D. Tex. 2012) (review of 4,000 pages of documents and one interview with defendants' executive sufficient for counsel to gauge strength of case).

Nov. 8, 2022). Courts considering this *Reed* factor recognize that "[w]hen the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually agreeable settlement is strengthened." *In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1064 (quoting *Klein*, 705 F. Supp. 2d at 651).[6]

Plaintiffs and Class Counsel recognized the significant risk, time, and expense involved in prosecuting Plaintiffs' claims through a motion to dismiss, class certification, discovery, summary judgment, trial, and appeals. Steckler Decl. ¶ 22. Continued litigation would be expensive, risky, and uncertain. While Plaintiffs are confident in the merits of their claims, even beyond the institution of a Recall, success is never guaranteed. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 413–14 (7th Cir. 2015) (reversing jury verdict of $2.46 billion after 13 years of litigation). In short, a "swift resolution of this dispute would avoid complex and protracted litigation," and this weighs in favor of approval. *Izzio v. Century Golf Partners Mgmt., L.P.*, No. 3:14-cv-03194-M, 2019 U.S. Dist. LEXIS 226946, at *19 (N.D. Tex. Feb. 13, 2019), *aff'd* 787 F. App'x 242 (5th Cir. 2019).

By instituting the Settlement, all eligible Class Vehicles shall be fixed for Settlement Class members, conferring a substantial benefit upon them. In addition, FCA has agreed to the reimbursement of already expended repair costs, and shall pay up to a total of $600,000 toward reimbursement for car rental costs. Steckler Decl. Exs. 1-A and , Part III. Hence, the Settlement unquestionably provides an extremely favorable, immediately realizable recovery, and eliminates all of the risk, delay, and expense of continued litigation. *Clark v. Lomas & Nettleton*

---

[6] "A settlement must be evaluated taking into account the uncertainty and risks involved in litigation in light of the strength of the claims and possible defenses." *Matson v. NIBCO Inc.*, No. 5-19-CV-00717-RBF, 2021 U.S. Dist. LEXIS 201909, at *32 (W.D. Tex. Oct. 20, 2021). "The court, however, must not try the case in the settlement hearings because 'the very purpose of the compromise is to avoid the delay and expense of such a trial.'" *Reed*, 703 F.2d at 173.

*Fin. Corp.*, 79 F.R.D. 641, 651 (N.D. Tex. 1978) (noting that the expense of trial can be "staggering," and carries with it the "distinct possibility" that the trial will "result in no recovery"). This *Reed* factor and Rule 23(e)(2)(C) are satisfied, further supporting final approval.

### 4.      The Stage of the Proceedings and the Amount of Discovery Completed Supports Approval

Courts in this Circuit are also required to consider the stage of the proceedings and the amount of discovery completed when determining the adequacy of a class action settlement. *See Reed*, 703 F.2d at 172. The key issue is whether the parties have obtained "sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settling the case on the terms proposed." *In re OCA, Inc. Sec. & Derivative Litig.*, No. 05-2165, 2009 U.S. Dist. LEXIS 19210, at *39 (E.D. La. Mar. 2, 2009); *Matson*, 2021 U.S. Dist. LEXIS 201909, at *28; *see also Ayers*, 358 F.3d at 369 (noting the third *Reed* factor considers whether "the parties and the district court possess ample information with which to evaluate the merits of the competing positions"). To that end, the Court "should consider all information which has been available to the parties." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 292 (W.D. Tex. 2007). Notably, a "settlement can be approved under this factor even if the parties have not conducted much formal discovery." *Klein*, 705 F. Supp. 2d at 653.

Class Counsel engaged in an extensive review of relevant documents produced by FCA Steckler Decl. ¶ 3. This helped inform their judgment about the strengths and weaknesses of the claims and defenses at issue. *Id*. In addition, they opposed several motions to dismiss—both in *Wilson* before the Court and *Neu* before Judge Scarsi in the Central District of California—that unveiled the relevant legal issues and potential hurdles. To inform those efforts, the Parties spent many months exchanging information and documentation, providing sufficient information to

all counsel to weigh the relative strengths and weaknesses of their respective cases. *Id.*; *see also In re Corrugated Container Antitrust Litig.*, 643 F.2d at 211 (explaining the trial court "may legitimately presume that counsel's judgment that 'they had achieved the desired quantum information necessary to achieve a settlement' is reliable"). Under these circumstances, there is "no doubt" that Plaintiffs were "able to form an adequate appreciation of the merits of the case before negotiating." *Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 U.S. Dist. LEXIS 27077, at *68–69 (N.D. Tex. Nov. 8, 2005) (cleaned up); *Ayers*, 358 F.3d at 369 (finding state of the proceedings favored settlement when discovery provided for ample information with which to evaluate the merits of the competing positions). Thus, this third *Reed* factor and the requirements of Rule 23 are satisfied.

### 5.     The Settlement is Reasonable Considering the Probability of Plaintiffs' Success on the Merits

This factor relates to trial and appeal risk. *In re Chesapeake Energy Corp.*, 567 F. Supp. 3d at 780. "[T]he Court must compare the terms of the settlement with the rewards the class would have been likely to receive following a successful trial." *DeHoyos*, 240 F.R.D. at 287 (citing *Reed*, 703 F.2d at 172). However, "the trial court should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Cotton*, 559 F.2d at 1330. The Court "must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial." *Reed*, 703 F.2d at 172 (internal quotations and citation omitted). The terms of the Settlement, which include a Recall intended to fix the safety Defect of the Class Vehicles for the Settlement Class members, represent an excellent outcome for Settlement Class members, justifying avoiding the risks of a trial absent Settlement that would likely to turn on complex

expert testimony. *See, e.g.*, *Celeste v. Intrusion Inc.*, No. 4:21-CV-307-SDJ, 2022 U.S. Dist. LEXIS 226841, at *19 (E.D. Tex. Dec. 16, 2022) (approving settlement that avoids a "protracted battle of the experts").

This factor is satisfied in cases where plaintiffs face "considerable hurdles in succeeding on the merits, and the Settlement Agreement provides a fair and reasonable recovery." *Cunningham v. Kitchen Collection, LLC*, No. 4:17-CV-770, 2019 U.S. Dist. LEXIS 111212, at *6 (E.D. Tex. July 3, 2019). Though Plaintiffs maintain they have a strong case on the merits, they would have to navigate complex, time-consuming steps to prevail in litigation, as discussed *supra*, and recognize that there are always uncertainties with trial. Plaintiffs are cognizant of the risks and costs of proceeding in litigation and have opted for the certainty of a settlement that provides the Class an outstanding result and immediate relief. The fourth *Reed* factor supports final approval of the Settlement.

### 6. The Range and Certainty of Recovery Supports Approval of the Settlement

"The focus of this factor is whether the settlement falls within the range of reasonableness." *Erica P. John Fund, Inc.*, 2018 U.S. Dist. LEXIS 69143, at *20. Courts compare the recovery for the class under the proposed agreement to "the relief the class could expect to recover at trial, *i.e.*, the strength of the plaintiff's case." *Id.* Courts in this Circuit consider a "range of possible damages that could be recovered at trial." *Maher v. Zapata Corp.*, 714 F.2d 436, 460 (5th Cir. 1983) (quotations omitted). After establishing the range of possible damages, the Court needs to evaluate whether the Settlement is "pegged at a [fair] point in the range" in light of the "likelihood of prevailing at trial and other factors." *Id.* (quotation omitted). When considering the possible range of recovery, a court should keep in mind that "compromise is the essence of a settlement." *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 850 (E.D. La. 2007). Thus,

"[a] proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances." *Klein*, 705 F. Supp. 2d at 649; *see also Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 n.69 (5th Cir. 1978) (noting that "compromise is the essence of settlement, and the settlement need not accord the plaintiff class every benefit that might have been gained after full trial").

The Settlement aims to and will achieve securing a fix of the safety Defect of the Class Vehicles—a significant result and benefit—in addition to reimbursing out-of-pocket costs of repairing the safety Defect and reimbursing rental costs up to $600,000.00 for eligible Settlement Class members who rented vehicles to provide for their transportation while their Class Vehicles were being repaired. This is an outstanding result. If finally approved, the Settlement will confer a value for Settlement Class members exceeding $80,000,000.00. Steckler Decl. ¶ 12. Absent the Settlement, litigating all of Plaintiffs' claims would have required a jury to decide the "battle of the experts"—"with no guarantee whom the jury would believe." *In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001). Thus, securing the relief provided by the terms of the Settlement ensures a significant recovery under any circumstance, and without imposing further costs on the Parties or the judicial system, or facing the uncertainty or risks of continued litigation. Satisfying this fifth *Reed* factor supports final approval.

### 7.    The Respective Views of Plaintiffs and their Counsel Support Approval of the Settlement

Class Counsel's recommendation that the Settlement satisfies the requirements for approval is entitled to deference, *Turner*, 472 F. Supp. 2d at 852, "especially in light of class counsels' significant experience in complex civil litigation and their lengthy opportunity to evaluate the merits of the claims." *DeHoyos*, 240 F.R.D. at 292; *see also Stott v. Capital Fin.*

*Servs., Inc.*, 277 F.R.D. 316, 346 (N.D. Tex. 2011) ("As class counsel tends to be the most familiar with the intricacies of a class action lawsuit and settlement, 'the trial court is entitled to rely upon the judgment of experienced counsel for the parties.'" (quoting *Cotton*, 559 F.2d at 1330)). Here, Class Counsel spent significant time and effort investigating these claims, obtaining and reviewing relevant data and documents, engaging clients across the country, and participating in extensive and highly fruitful negotiations. Steckler Decl. ¶ 17.

Based on their experience litigating this case, Class Counsel believe the Settlement provides a fair and reasonable result for Settlement Class members while avoiding the uncertainties of continued and protracted litigation. *Id.* ¶ 22. "Significant weight is given to the opinion of class counsel concerning whether the settlement is in the best interest of the class and the court is not to substitute its own judgment for that of counsel." *Marcus v. J.C. Penney Co.*, No. 6:13-CV-736, 2017 U.S. Dist. LEXIS 214427, at *10 (E.D. Tex. Dec. 18, 2017), *report and recommendation adopted* 2018 U.S. Dist. LEXIS 2387, at *4 (E.D. Tex. Jan. 4, 2018). "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton*, 559 F.2d at 1330. As of the filing of this motion—with only 2 weeks left for objections or opt-outs after Notice was issued on February 3, 2025—Kroll has received no objections. Passarella Decl. ¶ 13. "Receipt of few or no objections can be viewed as indicative of the adequacy of the Settlement." *Erica P. John Fund, Inc.*, 2018 U.S. Dist. LEXIS 69143, at *22 (quotation omitted). Settlement Class member feedback has been positive. Steckler Decl. ¶ 10; Passarella Decl. ¶ 13. This final *Reed* factor favors approving the Settlement.

### 8.    All Settlement Class Members Are Treated Equitably

Under the proposed Settlement, each authorized Claimant will be able to receive a fix of the safety Defect for no cost, the ability to seek reimbursement for past repairs, and, if needed, a

claim for rental vehicle reimbursement subject to the $600,000.00 global cap on rental reimbursements. *See* Steckler Decl., Exs. 1-A and 1-B. § III. The Settlement does not provide preferential treatment to any Settlement Class member, segment of the Settlement Class, or to Plaintiffs. The Settlement distributes relief to the Settlement Class on an equitable basis, and in an efficient manner. The ultimate effect of the Settlement is to make all Settlement Class Members whole: they will have a Class Vehicle free from a safety Defect and, if they have previously paid for a repair or a rental while a repair was being conducted, be able to obtain reimbursed repair costs and reimbursements for out-of-pocket rental costs related to prior repair. *See City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, No. 6:12-1609, 2015 U.S. Dist. LEXIS 26051, at *35 (W.D. La. Feb. 11, 2015) (approving plan of allocation where each class member would receive their *pro rata* share of the funds based on calculation of recognized losses); *see also Blackmon v. Zachary Holdings, Inc.*, No. SA-20-CV-00988-JKP, 2022 U.S. Dist. LEXIS 139417, at *10, 16–17 (W.D. Tex. Aug. 5, 2022) (finding settlement treated class members equitably and awarding service awards).

Thus "negotiations resulted in a Settlement that is fair to all of the class members and does not unjustly benefit any group of class members." *Vaughn*, 627 F. Supp. 2d at 748. The Settlement also provides for a straightforward claims process, further demonstrating the efficiency and equity of the class-wide settlement to resolve this litigation. The Rule 23(e)(2)(D) factor is satisfied, clearly supporting final approval of the Settlement.

### 9.    Other Factors Established by Rule 23(e)(2)(C) Support Approval

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of

attorneys' fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2)(C)(ii)–(iv).

First, the method for processing Settlement Class Members' claims and efficiently distributing any Settlement benefits to eligible Claimants includes a well-established procedure for processing claims submitted by Settlement Class Members. Claims for reimbursement will be submitted through FCA's reimbursement system, the details of which are prominently displayed and posted on the Short-Form Notice, Long-Form Notice, and a dedicated Settlement Website, as more fully discussed herein. Steckler Decl. Exs. 1-A and 1-B, § IV. FCA will provide an accounting of the reimbursement claims made and paid in a form acceptable to the Court at least one week before the hearing on Final Approval of this Settlement. *Id.* § 3.6. The manner of processing Claims proposed here is effective.

Plaintiffs are separately petitioning the Court for the specific award of Attorney's Fees, Costs, and Expenses. *See, e.g.*, *In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, No. 2328, 2014 U.S. Dist. LEXIS 178989, at *39 (E.D. La. Dec. 31, 2014) ("The Court reserves judgment on final approval of costs and/or fees until presented with a request by class counsel."). The Parties agreed on all the substantive and material terms of the Settlement before they reached agreement on a reasonable fee request with the assistance of an experienced mediator. Steckler Decl. ¶ 8. The requested fees will be paid directly by FCA. Steckler Decl., Ex. 1-A, § 6.2. The Fee and Expense application is consistent with (and even lower than) attorneys' fee awards in comparable cases. *See* Steckler Decl. ¶ 8. There are no other agreements between the Parties related to the Settlement. *Hays*, 2019 U.S. Dist. LEXIS 17029, at *31. Accordingly, this factor also supports final approval of the Settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii).

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the Settlement and grant final certification of the Settlement Class for settlement purposes. Plaintiffs will file a proposed Final Approval Order with their supplemental filing in support of Final Approval.

Dated: March 6, 2025                                            Respectfully submitted,

By: */s/ Bruce W. Steckler*
Bruce W. Steckler
State Bar No. 00785039
*bruce@swclaw.com*
Austin P. Smith
State Bar No. 24102506
*austin@swclaw.com*
**STECKLER WAYNE & LOVE, PLLC**
12720 Hillcrest Road
Dallas, Texas 75230
Telephone: (972) 387-4040
Fax: (972) 387-4041

Ben Barnow (*pro hac vice*)
*b.barnow@barnowlaw.com*
Anthony L. Parkhill (*pro hac vice*)
*aparkhill@barnowlaw.com*
Riley W. Prince (*pro hac vice*)
*rprince@barnowlaw.com*
**BARNOW AND ASSOCIATES, P.C.**
205 W. Randolph Street, Suite 1630
Chicago, IL 60606
Telephone: (312) 621-2000

Stephen R. Basser (*pro hac vice*)
sbasser@barrack.com
Samuel M. Ward (*pro hac vice*)
sward@barrack.com
**BARRACK RODOS & BACINE**
600 West Broadway, Suite 900
San Diego, California 92101
Telephone: (619) 230-0800

*Class Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of March, 2025, I caused a true and correct copy of the foregoing to be filed with the Clerk of the Court via the Court's CM/ECF system, which will cause a copy to be electronically served upon all counsel of record.

*/s/ Bruce W. Steckler*
Bruce W. Steckler

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that pursuant to Local Rule CV-7(a)(h), the parties met and conferred by email regarding Plaintiffs' Motion for Final Approval of Settlement. Defendant does not oppose the relief sought in this Motion.

By: */s/ Bruce W. Steckler*
    Bruce W. Steckler